Next case is Zanella LTD v. Saroyan Lumber Co, 05-1567. Mr. Benson, when you're ready. Thank you, Your Honor. May it please the Court. I am joined at the table by my co-counsel, Martha Sultan, this afternoon. In this case, we showed that the opposer's marked Zanella is a strong and a distinctive mark. You argued. Sorry, Your Honor? You argued. We argued. Right. I believe we showed it, Your Honor. Okay. We have to get back to that. Right. Strong and distinctive mark. The applicant is using the same Zanella mark. Both parties sell to the same class of purchasers, high-end consumers. Finally, the goods of the parties, clothing on behalf of Zanella and flooring on behalf of the applicant, are related in that they both can and do come from the same source. Clothing and lumber. Pretty big difference. Don't sound like natural areas of expansion. Your Honor, they are different products. Right. But the cases are legion that say that different products doesn't mean there can't be confusion. Where the marks are identical and where the opposer's mark is a strong and distinctive mark, then the question is whether there is a viable relationship between the goods. We've shown a viable relationship between the goods, as I said, because they both can and do come from the same source. We showed that many, namely ten, clothing designers are using their marks on flooring. We also showed that there's a reason for that. This is not, quote, collateral goods as the Board found, with absolutely no relationship between them. They're related because, and they're being used by, as clothing designers are using their marks on flooring for a reason. The reason is that they're using their expertise and their reputations in the design of clothing to expand into the design of flooring. Ten out of how many? In high end, I don't have a number for you, Your Honor. It's probably quite high, right? It's quite high, but ten is a lot. I mean, there are other cases which found a relationship between the goods based purely on the use by third parties of the same mark on both goods with less than that. In the Recock case, there were only two other manufacturers who used the products on both. In other cases, there were 13. The number doesn't matter so much as it does the fact that they have, in this case, that ten are in the design of flooring and that they're marketing the connection between the two. They're advertising that they are using their expertise in design, pattern, texture, color, to do in flooring what they've done in design. They're even, in some cases, marketing their clothing and flooring together on the same websites. So we've shown that there is, indeed, enough of a relationship. The board, in its findings, agreed that there was a trend of designers in the flooring. But it said that that would be enough, normally, to find a relationship between the goods sufficient for this case, but for two things. One, that the only famous designers are now in flooring. And two, that flooring is completely unrelated in this collateral part. I've discussed the second part. The first part was simply not true. There was no testimony, in this case, that only famous designers are in flooring. But these are factual findings to which we give significant deference. These are factual findings, and we give substantial evidence deference to the board on facts. Exactly, Your Honor. But in this case, we've shown that the board's findings were clearly in error. That's not the test. Lack of substantial evidence is the test. We've also shown that there is no evidence to support it. When the board said that only famous designers are in flooring, the evidence it gave for that finding was that certain designers are famous who are in flooring. It did not name them all. And, in fact, it ignored evidence to the contrary. There was evidence that at least two of the designers in flooring are narrow niche designers. So there was, A, evidence to the contrary, and, B, simply no evidence to support the notion that only famous designers are in flooring. What does narrow niche designers mean? The board didn't define that, but what it means is that it can mean lots of things, but it means it's not the designer the way I take it. The designer is not broadly in all categories and all levels of product. You could be narrow niche in terms of high-end clothing, the way Alexander Julian is one of the designers, a direct competitor, who has expanded into flooring. You could be narrow niche in the sense of Tommy Bahama, who makes perhaps more in the way of articles and different articles of clothing, but specializes in casual clothes with an island theme. That's a niche. Another basic error that the board made was to treat this case as a case about the general public. And that is not this case. This case, as I said, is about both parties selling to the same high-end consumers. When the board considered the class of purchasers, it said correctly that both sell to high-end consumers. Then it said, because neither party limits its description of its goods, it was bound to consider purchasers at all levels. Is high-end consumers a category or is it an incomplete category? High-end consumers of trousers or of lumber? High-end consumers, your honor, are high-income consumers. That is a category of purchaser that is valid in terms of trademark markets and in confusion as any other. There have been cases in which the category of passive purchasers was indeed high-end, luxury-type items for both parties, even though the products were different. They were both sold to people who could afford luxury items. That is a significant but not a huge mark. The board said... So what you've got, the evidence is you say the market is rich people, the names, the marks are the same, and ten designers have expanded to the floor-covering business. That's right. And that's it. That's our case. The test in cases like this is whether, in this case in particular, is whether consumers who know the opposers in them and its mark, when they see the same exact mark on floor and have also seen many clothing designers who are using the mark sometimes, will wonder or think that Zanella has done the same thing. And the answer to that, we think, has to be yes. I wanted to go back, if I could, to the passive purchasers. The board said, all right, they both sell to high-end consumers, but neither limits its goods in terms of description, and therefore we, the board, have to consider the entire market. In effect, in doing that, the board required us to show a likelihood of confusion for the public at large. And again, that, according to all the cases, is not the test. It cited no authority for that proposition, and we don't know it. The test is whether there's a likelihood of confusion among the purchasers of the party's goods. So the board, we think, made legal error and a fundamental error in this case by looking at this case as one of the general public, when in fact it's about high-end consumers. Excuse me. Owen, you mentioned that there are ten well-known clothing manufacturers or brand names. And are those the ten that are identified on page 16 of the board's decision, in the middle of the page there? Yes, sir. I counted 11 there. I'd heard of Calvin Klein, Kathy Ireland, Laura Ashley, Liz Claiborne, Ralph Lauren, and Versace. My colleague is high-end. I hadn't heard of the other ones, but just the ones that I had heard, I mean, they're very well-known establishments, and I don't know whether the ones I hadn't heard of are primarily focused on men's or women's clothing, but, you know, like for example, Laura Ashley is very well-known. Probably, you know, it's no slight to your client to say more known than Zanella. I mean, Zanella is kind of, I think the board characterized it as having some significant name recognition in a limited area, whereas these, at least the ones I identified, you know, even if you're not attuned to women's clothing or, you know, go into those kind of establishments a lot, you recognize the names. That's true, Your Honor, and that's partly why I say it's so important to look at this case for what it is, namely a case about high-end consumers. The people you, the designers you mentioned are well-known to a broader category of people. Our client deals at the high-end in clothing. The applicant deals at the same high-end in flooring. The point here is... Are these all high-end stores? No. Businesses?  Kathy Ireland is not high-end. Some are. I'd say half. The testimony here was roughly that half of these are high-end and half are not. But the testimony was also that they... I misunderstood what you said. This says that only two of them are also in the market of hardwood flooring. I thought you had said ten were. Ten are in flooring, not hardwood. In flooring, yeah, but in tile or carpets or some other... That's right. That's right. So, Your Honor, the point here is that the people who know Zanella, when they see the same name on the applicant's flooring, will wonder. It's the people who know Zanella. Zanella is not as widely known as it is Clayton. And what you're saying is if there is a certain segment of the population that will recognize your client's name, that is enough, even if that's not a large segment of the general population. It's not a large one, but it's quite enough. Are there Zanella stores in the United States, or is Zanella just a brand of clothing, men's slacks, that are sold in, say, high-end department stores? The latter, Your Honor. It's sold in Neiman Marcus, Saks Fifth Avenue, and the like, as well as a whole range of... or a long list of smaller specialty stores. You needed to draw a panel, but that shocked them. Shocked them. Would you like to save the remainder of your time? Very true, Your Honor. I would like to save the remainder of my time. Mr. Thomas. The Trademark Trial and Appeal Board hit it directly on the head when they said comparing apples to oranges. What the opposing tries to equate itself is to these famous name entities that have licensed a multitude of products,  and have just expanded their goods that they put the name on through licensing throughout all sorts of things. But isn't the other side correct, that for a small, distinct group of high-end consumers, of which I am not one, but for those people who shop at those stores and buy those kinds of goods, Zanella means something. And therefore, if they expand to floor covering, that's going to have meaning to whatever this class of people are who purchased the clothing. I think my response to that is that it wouldn't make any sense that people would think that it wouldn't make any sense for them to do that. To jump from $500 slacks, which is the extent of their reputation, to wooden flooring? I mean, that just doesn't make any sense. You're saying it's not likely that someone's going to walk out of Saks and then drive up to Home Depot. Well, first of all, my clients' products wouldn't be at Home Depot. They're sold through model homes, distributors, and trade display. But in an upscale market, right? Is your market upscale as well? And the testimony is in there. These places are not in shopping malls. They're in industrial kind of areas, not the model homes, but where the trade people go to look at the goods. But your purchasers are not typically high-end stores? No, the purchasers aren't. So you're saying, as you do, your business does pitch itself, if you will, to the same type of consumer as the slacks do. In other words, it's not the person who goes up to Home Depot to pick out some flooring, but someone who goes into a more, what we'll call, upscale establishment. I think the board put it correctly when the board said, well, there is an overlap.  Some people buy $500 trousers. A lot of people that make money that maybe would want to buy trousers of that price range don't choose to do that and probably have no knowledge whatsoever of Zanella's name, the Zanella clothing. And I think that while there may be some extent of overlap, it's really kind of, if you balance that factor with the other factors, as the board correctly did, there really isn't a significant likelihood of confusion. Pretty consistently throughout the testimony, the reference was made to people that make over $100,000, mostly with reference to the Zanella clothing. And in purchasers of Soroyan's Zanella floors, they probably would, to a large extent, be over $100,000 too. But I don't think that the proposer can seriously contend that every person that makes over $100,000 is familiar with the Zanella name. It's just not that well-known. It's just got a very niche market. And the list, it's an Italian design, a name brand, an Italian design label, and the competitors are listed on appendix page 1047, and also in my brief. That's a confidential part of it. And with the exception of one, not one of these competitors, with the exception of Armani, is on the list that the opposer is now referring to, this list of 32 entities that supposedly represent comparable businesses that are comparable to... If someone goes in to a place and buys the Zanella flooring product, are they going to know that it's a Soroyan product? In all likelihood, they won't even know the name at all. And this also is in the record. There's always an intermediary in the sale of the Zanella flooring. The intermediary is either the home builder or the distributor, but there's always an intermediary. And they tend to not... They, to a large extent, actually conceal the mark so that there is no brand name that the consumer is actually aware of, but even assume that it's not taken off. The way that the consumer picks out the product is by looking at the sample, touching it, feeling, is the color right? Does it look like distressed wood? That's really what the category of flooring is called. Old or new wood that's made to look old. And they pick it out from the sample, not from the name. The name plays virtually no part in the selection. So why is the name even at issue? I think the record reflected that your client took some care in terms of choosing the name. And what is the point of having the name? Is it because it's supposed to be useful for distributors? For the middlemen? It's just something to call it when the order it gets. To distinguish it. I mean, if you've got a sample and... You mean like the monkey could write Shakespeare, just by chance. The name of your client is Saroyan, and somehow it came to Zanella, which is someone else's name. Just a good name. The record also demonstrates that. It was originally going to be Stradilla. And at the very last minute... And we wouldn't be here. We wouldn't be here. And at the very last minute, one of the employees said, that has, I think, an unsavory connotation. And so at the last minute, it was changed to Zanella. Based on someone's personal name, right? Zanella is the name of somebody's maiden name or something? Yeah, the family name of her best friend's husband who had been killed or something like that. But yeah, I guess it is a family name. Some kind of personal connection. That was the reason for going from Stradilla to something else, or to that particular name. That was the reason for it, yes. It's like a floor manufacturing company having a new type of floor and calling it Xerox. Or Coca-Cola. I don't think my client would have called it Xerox. And I don't think my client would have called it Liz Claiborne or Kathy Ireland or any of these others. Those marks are just too famous. Basically, your defense rests on substantial evidence. Yes, there is substantial evidence. The opposer in the opening brief dismisses the testimony of our marketing expert as being theories based on ignorance. But that's just not true. He's well qualified. He's been in marketing quite a bit. When he first heard of the case, he said it's ridiculous to even think that there could be likelihood of confusion. And during the court he went out and did some looking around himself in preparation for his testimony. And basically confirmed what he pretty much thought to start off with except that he found fewer, less of a variety of Zanella products in the stores that he went to than many had anticipated. Anything further? I'm sorry? Anything further? Just one other thing. I think the board also pretty much hit it on the head when it said that this would be tantamount to granting a trademark in gross. And that's exactly what the opposer says it wants. It says he wants. It's on appendix page 1049. He doesn't want to give up any category. So I think there is substantial evidence to support all of the board's findings. This very great distinction between what the opposer is trying to compare itself to in saying, well, it would be a natural area of expansion and the kind of business the opposer is really in, which is high-end Italian designed, very exclusive clothing sold in very exclusive stores. The two things are different. And I think that there really is no lack of support for any of the board's findings. I guess I have nothing further to say. Thank you, Mr. Thomas. Mr. Benson has a little rebuttal time. Thank you, Your Honor. Again, counsel says we're trying to associate ourselves with more famous, more well-known marks. The evidence is to the contrary. The evidence of our case is not based just on famous designers. Our case is based on designers large and small, diversified and niche, expanding into form. Counsel says he can't imagine. It just wouldn't make any sense to see Zanella, which is known for clothing, to be making flooring. The evidence is that 10 designers are doing just that. Small, large, high-end, medium-end are doing just that. And so when Zanella customers see the exact same mark on flooring, and the marks are used in many cases. Counsel said that very often it's not. Well, the evidence was very often marks are seen. And they did, as Your Honor suggests, go to a lot of trouble to come up with this spiffy name, Zanella, which just happens to be our name as well. Zanella, we show a strong mark and a distinctive mark. No other registered Zanella mark in the United States, state or federal. $250 million in sales over the last six years. Dominates the market for a major item of high-end trousers. Zanella has a very strong and distinctive mark in its feet. Customers know it, and they know it well, and they like it. And when they see the same mark in other goods, in flooring, having seen Liz Claiborne and Missoni and Roberto Cavalli and Versace, having done exactly the same thing, they're going to, their question is going to be, well, that must be Zanella, the one we know. Thank you, Mr. Benson. The case should be taken under advisement.